McCarthy, J.P.
(concurring in part and dissenting in part). We disagree with the majority’s conclusion that the determination that petitioner received adequate assistance in the process of securing housing was irrational, arbitrary or capricious and, therefore, we respectfully dissent to that extent. The Department of Corrections and Community Supervision (hereinafter DOCCS) is statutorily obligated to “assist inmates eligible for community supervision and inmates who are on community supervision to secure . . . housing” (Correction Law § 201 [5]; *265 see People ex rel. Green v Superintendent of Sullivan Corr. Facility, 137 AD3d 56, 60 [2016]). During petitioner’s stay at Woodbourne Correctional Facility, officials met with petitioner numerous times to review, investigate and propose potential residences in regard to compliance with the Sexual Assault Reform Act (L 2000, ch 1, § 8, as amended by L 2005, ch 544, § 2 [hereinafter SARA]). Between petitioner’s arrival at Wood-bourne on September 30, 2014 and his release on February 4, 2015,[1] offender rehabilitation coordinators met with petitioner on nine separate dates to aid him in securing SARA-compliant housing. Petitioner’s parole officer met with him on at least six separate occasions during the same period to provide similar assistance.[2] Officials conducted investigations into 58 residences proposed by petitioner,[3] none of which were ultimately found to be SARA-compliant. Records indicate that officials sought proposals for residences from petitioner, at least in part, so that they could consider his preferences in their efforts to assist him in securing SARA-compliant housing.
The record further establishes that, in addition to investigating the SARA compliance of the 58 residences proposed by petitioner, officials made further efforts to identify and secure SARA-compliant housing for him. More specifically, officials made efforts to house petitioner at “Harrison House,” but the record establishes that there were no beds available at that facility. Thus, officials made arrangements to have petitioner’s name placed on that facility’s waiting list. In addition, a record entry from January 2015 indicates that petitioner advised officials that he was “now interested in Harrison House and like facilities.” Thus, it is reasonable to infer from this entry that officials had previously suggested said facility and others like it and that petitioner had indicated a lack of interest in living in such facilities.
Finally, petitioner acknowledges that officials provided him with the opportunity to reside at a SARA-compliant residential *266 therapeutic program at a cost of $620 a month.[4] Petitioner declined this opportunity given that the programing would not permit him to work, and without working he would be unable to afford the rent. It was not irrational to assist petitioner by proposing such a residence merely because he was ultimately unable to avail himself of the opportunity due to programing restrictions and cost. Finally, the record reflects that petitioner brought his grievance in the midst of DOCCS’s efforts, and it is uncontested that DOCCS ultimately secured a SARA-compliant residence for petitioner consistent with his indigent status in New York City’s Department of Homeless Services. Based on the foregoing record, it was not irrational, arbitrary or capricious to conclude that petitioner received adequate assistance in the process of securing SARA-compliant housing (see generally People ex rel. Green v Superintendent of Sullivan Corr. Facility, 137 AD3d at 60; Matter of Boss v New York State Div. of Parole, 89 AD3d 1265, 1266 [2011]). Accordingly, we would affirm the judgment.
Lynch and Aarons, JJ., concur with Garry, J.; McCarthy, J.P., concurs in part and dissents in part in a separate opinion in which Rose, J., concurs.
Ordered that the judgment is modified, on the law, without costs, by partially converting the matter into a declaratory judgment action; it is declared that (1) when a person whose prison sentence has expired and who is subject to the mandatory condition set forth in Executive Law § 259-c (14) is placed in a residential treatment facility pursuant to Penal Law § 70.45 (3) and Correction Law § 73 (10), the Department of Corrections and Community Supervision has an affirmative obligation pursuant to Correction Law § 201 (5) to provide substantial assistance to the person in locating appropriate housing and (2) the services provided to petitioner by the Department of Corrections and Community Supervision in locating such appropriate housing during his placement in the residential treatment facility at the Woodbourne Correctional Facility between September 30, 2014 and his subsequent release on February 4, 2015 were not adequate to satisfy that duty; and, as so modified, affirmed.

. DOCCS was empowered to transfer petitioner to Woodbourne for a term “not exceeding six months” (Penal Law § 70.45 [3]), and petitioner secured SARA-compliant housing after approximately four months of residing at Woodbourne.

. Thus, considering the meetings with offender rehabilitation coordinators and petitioner’s parole officer, petitioner met with officials to receive housing assistance, on average, approximately every eight days during his placement at Woodbourne.

. Although petitioner emphasizes his lack of Internet access and limited phone privileges, the proof establishes that available resources permitted him to identify 58 potential residences.

. Inasmuch as petitioner does not name the proposed facility, it is unclear whether he is referring to Harrison House. If petitioner is referring to Harrison House, the aforementioned evidence that he affirmatively indicated an interest in residing at that facility would further justify DOCCS’s efforts as to housing petitioner there.